IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| PMC MARKETING CORP | CASE NO. 09-02048 BKT |
| | CHAPTER 7 |
| Debtor(s) | |
| NOREEN  WISCOVITCH RENTAS, TRUSTEE | ADVERSARY NO.  12-00103 |
| Plaintiff | |
| PUERTO RICO ELECTRIC POWER AUTHORITY | FILED & ENTERED ON 10/19/2012 |
| Defendant(s) | |

**OPINION AND ORDER**

This proceeding is before the court upon Puerto Rico Electric Power Authority's ("PREPA") Motion to Dismiss [Dkt. No. 6] and Amended Motion to Dismiss [Dkt. No. 12]; the Trustee's Opposition to the Amended Motion to Dismiss [Dkt. No. 13]; PREPA's Reply to the Opposition to the Amended Motion to Dismiss [Dkt. No. 15]; and lastly, the Trustee's Sur-Reply to Opposition to Motion to Dismiss [Dkt. No. 16]. For the reasons stated below PREPA's Motion to Dismiss filed on June 11, 2012, as amended on July 10, 2012 [Dkt's No. 6 and 12, respectively] is hereby DENIED.

In its motion to dismiss, PREPA asserts that the complaint filed on March 2, 2012 is time barred and must be dismissed with prejudice. Their argument is two-fold. First, Noreen Wiscovitch Rentas ("Trustee") was not appointed or elected as the permanent Trustee[1] within the two year period specified in 11 U.S.C. § 546(a)(1)(A). That two year period expired on March 18, 2011 without a timely requested extension. The one year extension period provided under section 546(a)(1)(B) only applies to a permanent trustee who is elected within the two year period specified in section 546(a)(1)(A). Because the Trustee in the case at bar was an interim trustee, she did not benefit from

---

1 The terms "interim" and "permanent" trustee refer to the differentiation made in 11 U.S.C. §§ 701and 702.

1

the one year term afforded a permanent trustee to file avoidance actions pursuant to section 546(a)(1)(B).

PREPA's second argument is that 11 U.S.C. § 702(b) allows creditors to elect a permanent trustee until the 11 U.S.C. § 341 meeting of creditors (hereinafter "meeting") is concluded. Because the meeting has not been closed, creditors are still able to elect a permanent trustee. Consequently, the interim trustee has not become the permanent trustee on or before March 18, 2011 which was the deadline to file the captioned complaint.

PREPA's argument as to the interim status of the Trustee hinges on the fact that the Trustee failed to conclude the meeting when she continued the same *sine die.* Therefore, her automatic conversion from interim to permanent trustee under section 702(d) never occurred, effectively eliminating section 546(a)(1)(B). Left with only section 546(a)(1)(A), the interim Trustee filed her first extension of the term to file an avoidance of a preferential transfer on May 3, 2011, beyond the March 18, 2011 statute of limitations. The Trustee's Opposition cites two recent cases in the District of Puerto Rico regarding closure of a meeting. PREPA contends in its reply that those cases are limited to those instances involving the 30 day exemption objection period under Fed. R. Bankr. P. 4003(b)(1). PREPA argues those cases are distinguishable from the present one because the controversy before those courts involved the effect of non-closure as it relates to the exemption objection period rather than the conversion of the interim trustee to a permanent trustee under section 702(d).

In her rebuttal, the Trustee argues that she was indeed elected as permanent trustee on September 23, 2010, the date of the last meeting, which falls well within the two year time frame of

section 546(a)(1)(A). Because her election occurred within the section 546(a)(1)(A) term, the Trustee argues that she is entitled to the additional year under section 546(a)(1)(B). Therefore, the deadline to file avoidance actions would be September 23, 2011. This term was further extended by numerous timely filed requests for extension, which were granted.[2] The Trustee posits that a meeting cannot be continued indefinitely, and relies on Fed. R. Bankr. P. 2003(e) which requires the trustee announce a specific date and time for a continuance to be effected. Moreover, the most recent cases addressing this issue are from the District of Puerto Rico and unequivocally find that if the time and date of the next meeting is not announced, the meeting is deemed closed.

**I. Factual Background**

Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on March 18, 2009. On May 19, 2010, Debtor's chapter 11 case was converted to a chapter 7 case. On May 20, 2010, the Trustee was appointed as the chapter 7 interim trustee. On June 30, 2010, the Trustee commenced the meeting. The meeting was continued several times with the final meeting being held on September 23, 2010. That last meeting had a notation in the minutes [Dkt. No. 932 of the legal case] reflecting a continuance "sine die." The Court granted four requests by the Trustee to extend the term to file an avoidance action. The first extension was requested on May 3, 2011 [Dkt. No. 978 of the legal case], and the last extension expired on March 20, 2012 [Dkt. No. 1012 of the legal case]. On March 2, 2012, the Trustee filed the complaint that commenced this adversary proceeding. On June 11, 2012, PREPA filed its Motion to Dismiss, which was amended on July 10, 2012.

**II. Legal Analysis and Discussion**

---

[2] See docket numbers 978, 980, 984, 985, 995, 996, 1004, 1005, 1011 and 1012 in the legal case.

The arguments presently before the court center on the question of whether a meeting continued *sine die* can be deemed closed if another meeting is never convened. Section 341 (a) of the Bankruptcy Code requires that a meeting of creditors be convened "[w]ithin a reasonable time after the order for relief." Rule 2003(a) of the Fed. R. Bankr. P. provides the time frame within which a meeting must be scheduled for each chapter. Rule 2003(e) states that "[t]he meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time." An amendment to Rule 2003(e) which became effective on December 1, 2011, adds the requirement that the trustee promptly file a written notice specifying the date and time to which the meeting is adjourned.[3] This provision is designed to prevent indefinite adjournment. 9 COLLIER ON BANKRUPTCY ¶ 2003.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The case law in the First Circuit has uniformly concluded that a chapter 7 trustee may not hold the meeting open indefinitely or *sine die* as such a continuance will unduly prolong the time to object to the debtor's claimed exemptions. In re Newman, 428 B.R. 257 (B.A.P. 1st Cir.2010). See also In re Cushing, 401 B.R. 528 (B.A.P. 1st Cir.2009). The date and time of the adjourned meeting must be specified in the meeting minutes. Otherwise, the meeting will be deemed closed. In re Ramon, No. 08-1293 (ESL), 2012 WL 1344353, at *2 (Bkrtcy.D.Puerto Rico April 17, 2012). In chapter 13 cases, as in Cushing, this ruling may operate against the debtor and cause the dismissal of the petition. In chapter 7 cases, as in Newman, the debtor may benefit by enforcing the 30 day period to object to exemptions set forth in Rule 4003(b)(1).

The lead case in this Circuit, Newman, held that the meeting was concluded when the

---

[3] The October 1, 2012 edition of the Executive Office of the United States Trustee's "Handbook for Chapter 7 Trustees" complements Rule 2003(e) in that it now requires that meetings be closed or continued with a specific date and time.

4

proceedings ended without announcement of adjournment of any kind. This case was decided before the amendment to Rule 2003(e) took effect. In that case, the Panel cited the then applicable Rule 2003(e) and noted that "Rule 2003(e) has been understood to permit a continuance *sine die*." Newman, 428 B.R. at 262.  However, the panel was aware of the proposed language in the Rule because the Opinion contained a footnote pertaining to the change. Prior to December 1, 2011, there is no statutory provision or bankruptcy rule "specify[ing] the manner in which the meeting is to be 'concluded'" after it has been continued generally. See Moyer v. Dutkiewicz, 408 B.R. 103, 105 (6th Cir. BAP 2009) (citing In re Cherry, 341 B.R. 581, 585 (Bankr.S.D.Tex.2006)).

As will be addressed below, Newman continues to offer the court the necessary framework with which to conduct the legal analysis of the issue at hand. PREPA maintains that Newman, as well as the more recent Ramon, are distinguishable from the case at bar. PREPA argues that these cases deal with the determination of when the 30 day period to object to exemptions commences to run under Fed. R. Bankr. P. 4003(b)(1), and not the interim versus permanent trustee quandary under section 702(d). This Court disagrees. There is nothing in the holding of the BAP cases that would lead this Court to view them as restrictive. The determination of whether a meeting continued *sine die* is concluded is a distinct exercise. It is a first step, if you will, that must be resolved before you can move forward with the limitations imposed by either Rule 4003 or sections 546 and 702.

While this Circuit has yet to adopt a single approach to determine what constitutes a meeting closure, the First Circuit BAP has provided positive feedback for both the "bright-line" approach and the "case-by-case" approach. Newman, 428 B.R. at 264. In the absence of a clear rule or section on point, each approach attempts to define what constitutes the "conclusion" of the meeting. The BAP determined that each approach was useful for determining the outcome when a trustee has failed to

5

conclude or adjourn a meeting. Similar results will often prevail under either approach and both approaches may be applied jointly, pending special circumstances. Id.

Under the "bright-line" approach, a meeting continued *sine die* and thus "without a follow-up date will be deemed to have been concluded…." Id. at 262. The BAP went on to explain that the bright-line approach addresses concerns expressed by the Supreme Court about promptness and finality." Id. at 263. Further, as noted by the Sixth Circuit BAP, the bright-line approach "provides certainty to trustees as to what assets are to be administered, and allows debtors to move on with their fresh start...." Id. (quoting In re Dutkiewicz,408 B.R. 103, 106-07 (B.A.P. 6th Cir. 2009)).

Applying the "bright-line" approach to this instant case, PREPA admitted in its Amended Motion to Dismiss that although the Trustee continued the meeting on several occasions after its commencement on June 30, 2010, the Trustee did not provide a specific date and time for a continuance from the September 23, 2010 meeting. It was continued *sine die*. Conclusively, under this approach, because the meeting can be deemed closed on September 23, 2010, the Trustee's action adequately met the requirements of section 546(a). See e.g., Cushing; McGowan v. Ries (In re McGowan), 226 B.R. 13 (B.A.P. 8th Cir. 1998).

Under the "case-by-case" approach, circumstantial evidence will be examined to include at least some of the following factors in regards to the reasonableness of a trustee's delay in adjourning the meeting: (1) the length of the delay; (2) the complexity of the estate (3) the cooperativeness of the debtor; and (4) the existence of any ambiguity regarding whether the trustee continued or concluded the meeting. Newman, 428 B.R. at 262-63 (quoting Peres v. Sherman (In re Peres), 530 F.3d 375, 378 (5th Cir.2008)); see also Petit v. Fessenden, 182 B.R. 59, 63 (D.Me.1995), aff'd on other

6

grounds, 80 F.3d 29 (1st Cir.1996). Thus, if the trustee's delay is unreasonable, the meeting continued *sine die* will be deemed closed. Id. Several courts have noted the benefits of the "case-by-case" approach. These benefits include "enabling a trustee discretion in complicated cases yet restrains a trustee's ability to indefinitely postpone a meeting of creditors" thereby increasing the flexibility and discretions of a trustee to perform his or her duties. In re Cherry, 341 B.R. at 587; see also In re Brown, 221 B.R. 902, 906-07 (Bankr.M.D.Fla.1998).

Although the cooperativeness of the debtor and the complexity of the estate weigh in favor of reasonableness[4], the length of the delay and the existence of any ambiguity regarding whether the trustee continued to conclude the meeting weighs heavily in favor of unreasonableness.

In regards to the length of the delay, the history of the meetings in this case demonstrates that meetings were held within one to two months of each other. These meetings took place on June 30, 2010, August 19, 2010, September 14, 2010, and September 23, 2010. Because no meeting was scheduled or announced after the September 23, 2010 meeting, and thereby exceeding the usual one to two months between them, the length of the delay by the Trustee appears to be unreasonable and would demonstrate the Trustee's intent to close the meeting.

Lastly, there is no existence of any ambiguity regarding the Trustee's intention to continue the meeting. The Trustee in her Sur-Reply clarified her intent to not hold further meetings after the September 23, 2010 date. The Trustee pointed out that because no formal announcements were made

---

[4] In PREPA's Reply to the Trustee's Opposition [Dkt. No. 15], PREPA pointed out that the Debtor was highly uncooperative. The Debtor failed to provide several documents including paper copies of its books, records or documents. The Debtor provided to the Trustee several disks allegedly containing information necessary for the filing of complaints against various creditors that were in a format or program that was not easily accessible. Cf., In re Bace, 364 B.R. 166, 179 (Bankr.S.D.N.Y.2007) (trustee's delay is reasonable when debtor failed to produce business records).

in regards to any future meetings, her intention was clear that there would not be any future meetings. Cf., In re Cherry, 341 B.R. at 588-89 (the delay was not unreasonable when decision to continue the current meeting in the future was clearly announced). The Trustee further pointed out that she filed several motions to extend the filing deadlines because of the lack of planned future meetings. Consequently, this factor also weighs in favor of unreasonableness, i.e. closure of the meeting. Applying the "case-by-case" approach, the court finds it reasonable to conclude that the meeting was closed on September 23, 2010.

Reading the Code and Rules together creates a system where debtors, within a short timeframe, can attain finality about their retained assets and predict their finances more accurately moving forward. Strictly construing the Code and the Rules effectuates congressional intent because the carefully drafted text reflects both the policy and the goals underlying the mandate. The Code contains the numerous, and often conflicting, objectives of the consumer bankruptcy system: (1) equitably distributing assets among creditors; (2) expeditiously and efficiently resolving cases; (3) giving the individual debtor a fresh start; and (4) providing both debtors and creditors with a sense of finality.[5]

When interpreting and applying the Code and the Rules, analysis necessarily begins with the text. Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) ("The starting point . . . is the existing statutory text."). The Supreme Court has primarily used strict statutory construction in its bankruptcy decisions.[6] Thus, ascertaining the congressional intent for when a meeting concludes requires a

---

[5] Keith Sharfman, *Derivative Suits in Bankruptcy*, 10 STAN. J.L. BUS. & FIN. 1, 16 (2004).

[6] Carlos J. Cuevas, *The Rehnquist Court, Strict Statutory Construction and the Bankruptcy Code*, 42 CLEV. ST. L. REV. 435, 455 (1994).

8

natural reading of sections 546, 702 and the relevant rules and selecting an interpretation that is consistent with the entire statutory scheme. Rule 2003, working in tandem with section 341, governs the methodology for conducting the meeting of creditors, just as Rule 4003 sets forth the time constraints for objecting to a claim of exemptions. Rule 2003(e) sets the procedure that must be followed by the trustee to properly adjourn a meeting.  In part, to prevent an open-ended continuation of the meeting and to discourage parties from sleeping on their rights and then swooping in months or years later.

Most significant, prior to the December 1, 2011 amendments, Rule 2003(e) provided that "[t]he meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time *without further written notice*." (emphasis added). A natural reading of the prior Rule indicates that the trustee has discretion to adjourn the meeting but that the trustee lacks discretion regarding the announcement of a specific future date and time at the meeting. Though the statute's language is plain, and thus, must be enforced according to its terms, courts have interpreted the language of the Rule permissively, finding that the trustee "may," but is not required to, announce a future date and time at the meeting. Newman, 428 B.R. at 262; In re Flynn, 200 B.R. 481, 483 (Bankr.D.Mass.1996). This construction gave the trustee unfettered discretion to adjourn the meeting and leaves the debtor and creditors guessing as to when and if it will be reconvened.

The 2011 amendment to Rule 2003(e) added clarity to the matter. It required trustee's to take formal steps to effectuate a continuance by adding the language "[t]he presiding official shall promptly file a statement specifying the date and time to which the meeting is adjourned," thereby eliminating the use of the term *sine die*.

9

**III.     Conclusion**

In view of the above, this Court hereby denies PREPA's Motion to Dismiss. Because this Court reached the same result under both the "bright-line" and "case-by-case" approach, it will stay true to the guidelines provided by the First Circuit BAP and not exercise a preference for one approach over another. Further, because this Court has concluded that the Trustee has not violated section 546(a), the Court will not delve unnecessarily into the merits of PREPA's argument in regards to section 702(b).

SO ORDERED.

San Juan, Puerto Rico, this 19th day of October, 2012.

Brian K. Tester
U.S. Bankruptcy Judge